TEXAS LOAN AGENCY v. HIRAM HUNTER ET AL.

Delivered April 1, 1896.

**1.  Practice on Appeal—Agreement to Reverse and Remand.**
An appellate court will not reverse and remand a cause upon agreement of the parties, without reference to the merits of the case.

**2.  Verdict on Special Issues—Judgment.**
A judgment based on a special verdict can include no matters excluded from the findings of the jury, although the evidence may establish the existence of such matters beyond controversy.

**3.  Usury—Agent's Commission Payable by Borrower.**
When a lender authorizes his agent to make loans for him, under a general agreement that he must look to the borrower for his compensation, and the agent effects a loan, the commission charged will be added to the interest in determining whether the loan is usurious.

**4.  Same—Subsequent Incorporation of Usurers.**
Where a partnership has negotiated a usurious loan, a subsequent incorporation, with the members of the partnership as its principal stockholders and managers, will not enable it to avoid the penalties provided against usury.

**5.  Homestead—Pretended Sale—Verdict.**
When the uncontroverted facts show that a borrower went to a loan agency to borrow money, and told it he had no security except his homestead; that it told him he could not give it as security, but that he could make an absolute sale, and if he took notes he could borrow on the notes; that shortly afterwards the borrower returned to the loan agency with a deed conveying his property to a third person, which deed was not shown ever to have been delivered, but was left with the loan agency to be recorded, after the insertion, at the suggestion of the loan agency, of the recital that a vendor's lien was retained to secure the notes,—the jury is not warranted in saying that the loan agency had no notice that the sale was a mere pretense and sham.

**6.  Discounting by Corporation—Constitution.**
The constitutional provision prohibiting the creation of corporations with discounting privileges, does not render illegal a transaction involving the discounting of a note by a corporation.

APPEAL from Navarro.  Tried below before Hon. RUFUS HARDY.

*R. S. Neblett*, for appellant.—1.  The note sued on being free from usury, though it was a discounting by a corporation, was valid and binding on the maker, and appellant was entitled to recover, according to the terms of the note, principal, interest, attorney's fees and the commission it charged for taking up the Bigelow note for Hunter's benefit.  Bond v. Terrell, 80 Texas, 309; Walters v. Association, 29 S. W. Rep., 50; Logan v. Association, 28 S. W. Rep., 141; Williams v. Bryan, 68 Texas, 593.

2.  The transaction between Hunter and Duffey, in 1883, and the transaction between Hunter and Bigelow, in 1885, may have been usurious, but if they were, the usury cannot be charged to appellant and deducted from the amount loaned appellee to pay off the usurious note of Bigelow.  Baird v Melwood, 11 S. W. Rep., 1881; Foard v. Grin-

ters, 18 S. W. Rep., 1034; 27 Am. & Eng. Ency. of Law, 1065; Vaught v. Ryder, 83 Va., 659; 5 Am. St. Rep., 655; Gleason v. Childs, 52 Vt., 42.

*W. W. Ballew* and *Frost & Blanding*, for appellee.—1.   The court erred in rendering judgment for plaintiff, foreclosing a lien upon defendants' homestead for any part of the note or notes sued upon, for the reason that the jury determined by their verdict that the vendor's lien claimed by plaintiff had its origin in a contract or transaction which was a pretended sale of defendants' homestead, which is in violation of the State Constitution, and void.   Constitution of Texas, art. 16, sec. 50; Hayes v. Hayes, 66 Texas, 608; Inge v. Cain, 65 Texas, 75; O'Shaughnessy v. Moore, 73 Texas, 108; Land Co. v. Blalock, 76 Texas, 85; Mortgage Co. v. Norton, 71 Texas, 683; Pellat v. Decker, 72 Texas, 581; Kempner v. Comer, 73 Texas, 203.

2.   The court erred in rendering judgment for plaintiff, in that the jury by their special verdict had determined that the note sued upon by plaintiff, a private corporation, created under the laws of Texas, was acquired by plaintiff from Hiram Hunter in a transaction which constituted a discount, and the exercising of a discounting privilege on part of plaintiff, which character of transaction is denounced and prohibited by the Constitution, and is therefore void, and can not be made the basis of an action.   Anderson v. Association, 16 S. W. Rep., 298; Trust Co. v. Car Co., 139 U. S., 24.

NEILL, ASSOCIATE JUSTICE.—Neither party is satisfied with the judgment in this case.   When it was rendered both moved for a new trial, and agreed that it should be granted.   Their motions being overruled, and their agreement unheeded, they gave notice of appeal, assigned errors, and, after briefing the case, each appeared by counsel in this court and, without agreeing upon any error, agreed to its reversal, and asked that it be reversed and remanded on such agreement.   To save ourselves from the consideration of questions of unusual complexity, we would gladly yield to their request and reverse the case without expression of opinion on any question involved, could we do so consistently with our duty.   If there are errors in the proceedings requiring a reversal, we must indicate them, and endeavor by an expression of opinion as to the law governing the case to save the trial court from commission of like errors upon another trial, and not leave it in greater perplexity than at first by holding its judgment erroneous, without indicating why or wherefore. We proceed to the discharge of this duty, not without doubts as to the proper solution of some of the questions.

On March 17, 1893, the Texas Loan Agency, a corporation organized under the laws of Texas, sued Hiram Hunter and his wife, Eleanor, on the following instruments, and to foreclose an alleged vendor's lien on certain lands to secure their payment:

"$800.00.                    Corsicana, Texas, March 29, 1887:

"I acknowledge a just indebtedness of eight hundred dollars on two notes executed by Hiram Hunter in favor of J. F. Metcalf, dated the 5th day of April, 1883, for the sum of twelve hundred and fifty dollars each, due on the 21st day of March, 1884, and 1885, attached hereto and made part hereof, and, whereas, said note has been transferred to the Texas Loan Agency of Corsicana, Texas, and they have agreed to grant an extension of the time of payment of said sum.

"Now, therefore, in consideration of said extension of time, I promise to pay said sum of eight hundred dollars on the 1st day of April, 1892, to the order of the Texas Loan Agency, at their office in Corsicana, Texas, together with interest thereon from this date at the rate of eight per cent per annum until maturity, and such interest at the rate of twelve per cent per annum from maturity until paid, together with ten per cent of the amount due as attorney's fees, if this note is sued upon or placed in the hands of an attorney for collection. The said interest from date until maturity payable annually on the 1st day of April in each and every year, according to the terms of five interest coupons hereto annexed. And it is agreed in the making and delivery of this new promise, that if any one of said annexed coupons shall remain unpaid for ten days after maturity thereof, then at the option of the legal holder of this new promise, the whole principal and interest then accrued shall at once become due and payable, and the holder may proceed to collect the same by foreclosure of the vendor's lien securing the same, or otherwise, as he may elect.

                                                "Hiram Hunter."

And the unpaid coupons attached to said note are substantially as follows:

"$64.00.                    Corsicana, Texas, March 29, 1887.

"On the 1st day of April, 1892, for value received, I promise to pay to the order of the Texas Loan Agency, at their office in Corsicana, Texas, the sum of sixty-four dollars, with interest after maturity, and until fully paid, at the rate of twelve per cent per annum. This coupon being given for an annual installment of interest at the rate of 8 per cent per annum due at maturity hereof, upon my new promise to pay, of even date herewith, 2 certain principal notes executed by me, each for the sum of $1250, the said new promise to pay being for the principal sum of $800.

                                                "Hiram Hunter."

The defendant plead usury as to the notes and all the transactions, hereinafter stated, connected with them, and asked that all payments of interest he had made be credited on the original debt. He also alleged that the land upon which the lien is sought to be foreclosed, at the inception of the transaction leading up to the execution of the instruments sued on, was and has ever since continued to be his homestead, and that his sale to Metcalf was fictitious, and made at the instance of W. R.

Bright, to avoid the law prohibiting liens on homesteads. He also plead that the note was void because it was discounted by a Texas corporation.

The history of the transactions between the loan agency and Hunter, gathered from the pleadings of the respective parties and fully shown by the undisputed testimony, is as follows:

In March, 1883, W. R. Bright and H. G. Damon were partners under the firm name of Texas Loan Agency. Their business was to loan money and buy and sell lands. They advertised in the eastern States for money to lend on a certain rate of interest, agreeing to allow parties furnishing them money interest from the time the money was received until it was loaned, and when loaned to guarantee interest and principal. At that time they had on hand $540 which had been sent them by Thomas A. Duffey, of the State of New York, to loan at a certain rate of interest from the date of its receipt. This money was, with other money held by them, deposited in a bank to their account, and Duffey credited with the amount on the books of the firm.

About this time Hiram Hunter, who then owned as his homestead the 80 acres upon which the lien is claimed, went to the Texas Loan Agency to borrow money, and was asked by Mr. Bright, a member of the firm, what collateral security he had, and, upon his replying nothing but a homestead, he was told by Bright that he could not borrow money on a homestead. Hunter then said he was from the North, and did not know the laws of the State, and asked what he could do with his homestead. Bright informed him that he could make an absolute sale of the homestead, and that, if he took notes, he might borrow on the notes; but there should be no condition whatever in the sale. These facts are shown by Bright's own testimony. Hunter and his wife then, on the 21st day of March, made a deed conveying their homestead to J. F. Metcalf, who executed to Hunter his two promissory notes of even date therewith for $1250 each, one payable on the 21st of March, 1884, and the other on the 21st of March, 1895, which recite they were given for the purchase money of the land and expressly reserve a vendor's lien to secure their payment. As between Hunter and Metcalf, this was a fictitious sale, made wholly for the purpose of enabling the former to borrow money on the notes in evasion of law. Hunter then took these notes to the Texas Loan Agency and assigned them as collateral security to a note which he executed to Thomas A. Duffey, of date March 21, 1883, for $540, with interest at the rate of 10 per cent per annum, payable semi-annually, and the principal maturing two years after date. For this note he received $500 in money, Bright and Damon retaining $38.20 as their commission and $1.80 for recording the deed from Hunter to Metcalf; and the account of Duffey was charged on the books of the loan agency with the note, $540. Upon the 5th of April, 1883, J. F. Metcalf reconveyed to Hiram Hunter the 80 acres of land, upon Hunter's executing him two promissory notes for $1250 each, due respectively March 21, 1884 and 1885.

In 1884 the Texas Loan Agency was incorporated, Bright and Damon owning and controlling a majority of its stock, and it continued the same character of business formerly done by the firm of the same name, and was managed by the same parties.

In 1885, about the time the note payable to Duffey became due, Hunter, being unable to pay the same, made an arrangement with the loan agency by which his note payable to Duffey was taken up. This was done by the agency paying it off with money it had received from C. B. Bigelow, of Massachusetts, and taking Hunter's note payable to Bigelow for $650, due in two years, with interest from date, payable semi-annually, at the rate of 8¾ per cent per annum. Bigelow's account was then charged on the agency's books with the amount of the note. Hunter had paid $63 as interest on the Duffey note before, there being, according to its terms, the principal and $45 of interest due when the new note was given. For its services in this transaction the agency charged Hunter $65. So the Bigelow note represented $540 principal, and $45 interest on the Duffey note, and $65 commissions retained by the agency. Metcalf's two notes which he had executed to Hunter for $1250 each, which had been held as security for the Duffey as well as the Bigelow note, were taken up on March 27, 1887, and the notes executed by Hiram Hunter to Metcalf were deposited as security for the note to Bigelow, in lieu of the Metcalf notes, and are the notes referred to in the one sued on, and by virtue of which a vendor's lien is claimed.

When the Bigelow note matured there was due, according to its terms, $650 principal and $31.45 interest, making a total of $681.45. Hunter being then unable to pay, the loan agency paid Bigelow his money, and he transferred the note to it by his indorsement, and the note sued on was made to the loan agency in consideration thereof, with the addition of $44, money loaned by the agency to Hunter. On this transaction the agency charged Hunter $75 commission, which with the principal and interest on the Bigelow note and the money loaned make $800, the amount of the note sued on. On this note $256 was paid as interest.

The court by its charge submitted to the jury as special issues, (1) whether the land when conveyed by Hunter and wife to Metcalf was their homestead; (2) if it was, then whether the sale was pretended only; and (3) if pretended, whether either Damon or Bright had knowledge of such fact when the first loan was made. The first two of these questions were answered in the affirmative, and the second in the negative. At the instance of the defendant, the question was submitted to the jury as to whether the taking by the plaintiff of the note sued on was a discounting transaction, which was answered in the affirmative. Upon the findings of the jury on these issues, and the undisputed facts above recited, the court entered judgment in favor of the plaintiff for $469, with a foreclosure of the alleged vendor's lien on the premises. This amount was attained by charging Hunter with the principal and interest on the Bigelow note, and the sum of $44, cash advanced him when the note

sued on was executed, aggregating $725, and by deducting from the aggregate amount $256 paid since the execution of the last note.

The Texas Loan Agency complains of the court's deducting from the $800 note the $75 it charged Hunter as a bonus, and also of the deduction of the $256 of interest paid after the note was made. Mr. Hunter assigns as error, (1) the failure of the court to submit to the jury all the issues presented by the pleadings and evidence, and especially, in excluding the question of usury, which was specially plead, and in refusing to give a special charge requested by him on that issue; (2) the entry of judgment foreclosing a lien on his homestead; (3) not entering judgment in his favor upon the special finding of the jury that the transaction in relation to the note sued on was a discounting; and (4) entering judgment in excess of the difference between the sum of money actually received by him, and the aggregate of the several sums paid by him as interest and commissions. The determination of this last assignment of error will settle the question involved in the one made by the loan agency, and will be considered in its order.

*Opinion.*—A judgment, being only an expression of the legal result of the facts established by the verdict, can include no matters excluded from the findings of the jury. Hence a special verdict cannot form the basis for a judgment, unless it finds all the material facts put in issue by the pleadings, although the evidence may establish beyond controversy the existence of facts not found. Paschal v. Acklin, 27 Texas, 191; Moore v. Moore, 67 Texas, 294.

It is readily seen that the matters found by the special verdict in the case form an insufficient basis for the judgment·rendered. The issue of usury, which was plead, and upon which, in our judgment, there was evidence sufficient to require its submission, was withheld from the jury, though a special charge was asked thereon, for the reasons stated by the trial judge, that he deemed it improper to submit an issue as to which there was no controversy, and as to which the court would be authorized to render a judgment non obstante veridicto, and that "under the found and undisputed facts, he did not and perhaps never would know what the law is." It has been shown that the first reason is not founded on the law; and as to the second, it would seem that if the judge was sufficiently informed as to the law to enter a proper judgment on the facts, his knowledge was sufficient to enable him to frame a proper charge upon them.

It will be seen from the undisputed facts that the origin of the note sued on can be traced directly to the one for $540 made in the office of Messrs. Bright and Damon (the Texas Loan Agency) by Hunter to Duffey, for the $500 which the maker only received of money held by the partnership, under their guaranty of payment to the owner of the principal together with a "certain rate of interest." In other words, the $890 note is a lineal descendant of the Duffey note. The author of its being is the Texas Loan Agency, who at every change of its name has

been present adding to its commissions. It has taken from the borrower until it has grown large enough to swallow the [homestead of Hunter's family. Is this usury? When one negotiates a loan through a third party with a money lender, and the latter bona fide lends the money at a legal rate of interest, the contract is not made usurious merely by the fact that the intermediary charges the borrower with a heavy commission, the intermediary having no legal or established connection with the lender. Fowler v. Trust Co., 141 U. S., 385; Grant v. Insurance Co., 121 U. S., 105; Call v. Palmer, 116 U. S., 98; Guise v. Security Co. (Ala.,) 8 So. Rep., 388.

But, in this case, if it can be said that Duffey was the lender, it can not be said, in view of the undisputed facts, that the Texas Loan Agency was an intermediary having no legal or established connection with the lender. So the principle quoted does not apply here.

It is also well established that when an agent authorized to lend money for his principal exacts, without knowledge or authority of such principal, money from the borrower for his own benefit, this does not make the contract usurious. Williams v. Bryan, 68 Texas, 593; Call v. Palmer, 116 U. S., 98; Mackey v. Winkler (Minn.), 29 N. W. Rep., 337, and authorities cited in note. But when a lender authorizes his agent to make loans for him, under a general agreement that he must look to the borrower for his compensation, and such agent, for the lender, effects a loan, and charges the borrower a commission, this will make the contract usurious, whether the lender knew of the charge or not (Fowler v. Trust Co., 141 U. S., 385); for this exaction is by the authority of the lender, the principal. Mortgage Co. v. Whaley, 63 Fed. Rep., 746; Dayton v. Dearholt (Wis.,) 55 N. W. Rep., 148.

In this case, Mr. Bright testified: "We advised, and so agreed with the parties who left money with us, that they should have so much net interest, and that all expenses for loaning and handling the money should come out of the borrower." Therefore this testimony brings the case squarely within the rule just quoted. Even in the absence of such testimony, the case falls within the rule; for the undisputed evidence shows that the money furnished by Duffey and Bigelow was received by the loan agency anterior to the negotiation of the respective loans to be invested by it upon its guaranty to them of the principal and a "certain rate of interest." This is almost conclusive that they knew the agency was charging the borrower. As the universal presumption in business is, that something is never done for nothing, the owners must have known that the agency was paid by the only other party interested, Mr. Hunter. Mortgage Co. v. Whaley, and Fowler v. Trust Co., supra.

Besides, under the facts, it is a question to be considered whether the agency was not itself the real lender simply of money it had borrowed from other parties, and used the names of its lenders as payees in the notes of the parties to whom it loaned only as cloaks to conceal usury. If the jury should so find, the law will thrust aside such garments of fraud and hold the agency a usurer. If, then, Duffey and Bigelow be

considered as the lenders, and they authorized the agency to make the loans, under a general agreement that it should look to Hunter for compensation, or if the agency was the real lender, under a cloak to hide usury, in either event it cannot escape the consequence of the usurious transaction. Twelve per cent per annum was the highest rate of interest allowed by law on March 21, 1883. That the amount charged Hunter for the money then loaned him on the Duffey note exceeded this rate, is demonstrable by a simple calculation. If the facts bring the transaction within either of the principles of law just advanced, usury is established; and as Bright and Damon at that time composed the partnership under the name of the Texas Loan Agency, and are the principal stockholders and managers of the corporation which organized and continued under the same name the business of the partnership, its consequences are chargeable to such corporation, and it should be charged with all interest and commissions charged and collected from the time the Duffey note was made, and Hunter credited on the note sued on—it being tainted with the usury of the note it descended from—with such interest and commissions. This disposes of plaintiff's assignment of error and the last one herein mentioned of the defendants.

The next question is, did the court err in adjudging and foreclosing a vendor's lien on defendants' homestead. This depends upon whether the evidence was sufficient to warrant the jury in finding that neither Bright nor Damon had knowledge of the fact that the conveyance by Hunter and wife to Metcalf was pretended and fictitious, and made for the purpose of evading the law. Our Constitution provides that all pretended sales of the homestead, involving any condition of defeasance, shall be void. It has been virtually held that one who deals with a vendee holding under a deed of conveyance which would as between the parties to it be void under this provision, is protected if he find the deed properly proved up and registered, and that in view of the registration laws he is not required to pursue his inquiry beyond such record. Eylar v. Eylar, 60 Texas, 315. But if one has notice, outside of and independent of the record, that the conveyance was made to the apparent vendees by the owners of the homestead for their accommodation, and as a means to enable the owners to procure money, he can acquire no rights from such apparent vendee. Hurt v. Cooper, 63 Texas, 363. As such conveyance is declared void by the Constitution, we think the burden of proving that he had no knowledge of the facts rendering it invalid is upon him who asserts a right under the fictitious vendee. When the uncontroverted facts, showing that Hunter, when he went to the loan agency to borrow money, told Bright he could give no security except his homestead; that Bright told him he could not give it as security, but that he could make an absolute sale, and if he took notes he could borrow on the notes; that, shortly afterwards, Hunter went to Bright with the deed to Metcalf and the notes purporting to be for the purchase money, which deed was not shown ever to have been delivered by Hunter to Metcalf, but was, after the insertion at the sug-

gestion of Bright of the recital that a vendor's lien was retained to secure the notes, left with him to have recorded,—are considered, we do not think the jury was warranted in saying that neither Bright nor Damon had notice that the sale was a mere sham and pretense. The evidence hardly tends to support the verdict. One cannot close his eyes and ears to facts, nor bar his mind from a conclusion that any rational being would draw from them, and thus shelter himself as an ignorant innocent.

The Constitution does not declare discounting illegal, but only prohibits the legislature from creating corporations with discounting privileges. Logan v. Association, 28 S. W. Rep., 141; Walters v. Association, 29 S. W. Rep., 52. Hence there is no merit in defendants' assignment complaining of the court's not entering judgment on the findings of the jury that the transaction was a discounting.

For the errors indicated, the judgment of the court below is reversed and the cause remanded, at appellant's costs.

*Reversed and remanded.*