Rufus G. Byrn et al v. Philip Kleas.

Decided January 27, 1897.

**1. Community Property—Presumption.**

Certificate for a league and labor of land was granted to one as a married man in 1838 and was on hand at the dissolution of his marriage by the death of his wife in 1870. The burden of proof was on those who claimed the contrary to show that the marriage took place after the services for which the certificate was granted were rendered, and in the absence of such evidence the land was presumed to be community property. (Rev. Stats., art. 2853; Nixon v. Cattle Co., 84 Texas, 411.)

**2. Will—Description of Land—Undivided Interest.**

The will of a testator devising "833 acres of land in S. County, to be taken off the headright league of land granted to R. B." passed to the devisee an undivided inter-

est of 833 acres in the tract mentioned and was not void for failure to designate the particular portion of the survey bequeathed.

**3.  Community Property—Partition—Devisee—Election.**

Where the surviving husband had conveyed away all but 1920 acres of a league and labor survey belonging to the community, the devisee of an undivided 833 acres of such survey through the will of the deceased wife could ratify such disposition by the husband and elect to have his portion set aside from the 1920 acres remaining.

**4.  Same.**

Where the devisee so elected it was not necessary to make parties to the suit for partition the persons who had purchased the balance of the survey from the surviving husband.

**5.  Pleading—Marriage.**

A petition for the recovery of land as community property claimed under devise from the wife alleged that the land was granted and patented to R. B. during the existence of the marital union between him and E. B. and so became the community property of said R. B. and E. B., his wife.  This was a sufficient allegation of the marriage of R. B. and E. B. at the time the land was acquired, though specially excepted to.

**6.  Pleading—General Demurrer.**

An allegation that after the settlement of all outstanding community indebtedness of said R. B. and E. B. there remained undisposed of 1920 acres, specifically described, out of a league and labor survey granted to R. B., was sufficient, in the absence of a special demurrer, to admit proof that R. B. had sold all the headright except such 1920 acres.

APPEAL from the District Court of Llano County.  Tried below before Hon. W. M. ALLISON.

*Lauderdale & Linden,* for appellants.—That in 1848 Eliza Byrn was the wife of Rezin Byrn, and that the land in controversy was patented to Rezin Byrn in the year 1846 by virtue of headright certificate issued to him as a man of family in the year 1838 under the Constitution of the Republic of Texas, was wholly insufficient to show any community, or other right, of said Eliza Byrn to any of said land.  Hatch v. Dunn, 11 Texas, 708; Lindsay v. Freeman, 83 Texas, 263; Edwards v. Brown, 68 Texas, 329; 2 Greenl. Ev., secs. 309, 354.

The attempted devise of land described as follows:  "Eight hundred and thirty-three acres of land in San Saba County, Texas, to be taken off of the headright league of land granted to Rezin Byrn" is void for uncertainty because it shows that it was not the intention of the devisor to devise an undivided portion of 833 acres of said league of land, but to devise, instead, a divided, distinct, portion thereof, which separate portion is not sufficiently identified by the description used as to vest any interest whatever.  Philleo v. Holliday, 24 Texas, 43.

If plaintiff acquired an undivided interest it was one of 833 acres out of the entire league and labor and not out of the 1920 acres.  Battle v. John, 49 Texas, 210.

When the evidence developed that other persons, not parties to the suit, owned undivided interests in the land as tenants in common with the plaintiff and defendants, it was error for the court to proceed with the trial and render judgment for partition of the land without such

other persons being first brought into the suit as parties.   De La Vega v. League, 64 Texas, 212.

As against a special exception there was no sufficient allegation that Rezin Byrn and Eliza Byrn were ever married.   Chrisman v. Miller, 15 Texas, 161; Ballard v. Anderson, 18 Texas, 377; Whitlock v. Castro, 22 Texas, 109; Brown v. Mitchell, 75 Texas, 14.

*Chas. J. Gillespie*, for appellee.

KEY, ASSOCIATE JUSTICE.—The nature of this suit and the material facts proved are stated as follows in appellant's brief:

This is an action of trespass to try title, instituted by Phillip Kleas, appellee, against the appellants, Rufus G. Byrn, C. H. Bryn, S. W. Kendrick and William H. Frease, in the District Court of Llano County, Texas, returnable to the December term, 1895, of the District Court of Llano County, not in the usual form for such actions, but alleging that a certain parcel of land, about 1900 acres, particularly described, part of the Rezin Byrn headright league and labor of land situated in Llano County, had been granted and patented to Rezin Byrn during the existence of the marital union between him and one Eliza Byrn, and so became the community property of said Rezin Byrn and Eliza Byrn, his wife; that prior to the death of said Rezin Byrn his wife died testate, without issue, leaving plaintiff and another independent executors of her will, by which will she devised to plaintiff "eight hundred and thirty-three acres of land in San Saba County, Texas, to be taken off of the headright league of land granted to Rezin Byrn," and that by said devise said testatrix intended to devise to plaintiff 833 acres of land to be taken out of her community interest in the said Rezin Byrn headright survey, which survey is and was the community property of said Rezin and Eliza Byrn; that after the payment of all outstanding community indebtedness of said Rezin and Eliza Byrn there remained undisposed of the following described part of the Rezin Byrn headright survey (here setting out a portion of said survey by metes and bounds, amounting to about 1920 acres); that of the community interest of one-half thereof to Eliza Byrn, plaintiff, by virtue of the said devise to him from said Eliza Byrn became a co-tenant with said Rezin Byrn to the extent of an undivided 833 acres, to be taken out of the undivided community interest of said Eliza Byrn in the parcel of said land so set out by metes and bounds.   Said petition then alleges that defendants claim a certain unascertained portion of said land so particularly set out by metes and bounds, as heirs of said Rezin Byrn, and have wrongfully ejected plaintiff from same and it prays for judgment for the title of said 833 acres undivided interest in said 1920 acres, and for partition, for writ of possession and for damages.

Defendants answered with a general demurrer; a special exception that the plaintiff, undertaking to set out his title to the land and showing that he claimed same through Eliza Byrn as community property of

herself and Rezin Byrn, failed to allege that said Rezin Byrn and Eliza Byrn were ever married, or to allege facts sufficient to ·show that said land was their community property; a general denial and plea of not guilty and bona fide purchase.

. The general and special demurrers ·were overruled, to which defendants duly excepted. The case was then on the 3d day of January, 1896, tried by the court without a jury and judgment rendered in favor of plaintiff that he recover of all the defendants an undivided 833 acres of the particular 1920 acres of the league and labor set out by metes and bounds in the petition. To all of said judgment the defendants excepted and gave notice of appeal to the Court of Civil Appeals for the Third Supreme Judicial District of Texas and perfected said appeal.

*Statement of all the Material Facts Proved and Evidence Admitted Upon the Trial.*—1.   In cause No. 754 in District Court of Llano County, wherein Jno. C. Oatman and W. H. Freas and these defendants, except S. W. Kendrick, were plaintiffs, and Sarah C. Ball and J. N. Henderson were defendants, said plaintiffs on December 17, 1892, recovered from said defendants the 1920 acres of land here in controversy.

2.   The league and labor of land of which that 1920 acres in controversy is a part was granted to Rezin Byrn as a man of family by headright certificate on the 19th day of January, 1838, by the Board of Land Commissioners of Colorado County, and was patented to him on the 15th day of February, 1846, and he had no other headright certificate.

3.   In the year 1848 Rezin Byrn was probably, but ·not certainly, a married man, and his wife was Eliza Byrn, but the date of his marriage is not shown.   The only testimony on this question—is by plaintiff, and as follows: "I was acquainted with Rezin Byrn and his wife, Eliza Byrn.   First knew them in 1848."

4.   They were at some time man and wife.

5.   She, Eliza Byrn, died, testate, in 1870, and he, Rezin Byrn, died in 1878.

6.   By will which was signed April 15, 1870, and probated in July, 1870, Eliza Byrn in the following language devised to plaintiff "eight hundred and thirty-three acres of land in San Saba County, Texas, to be taken off the headright league of land granted to Rezin Byrn," and appointing plaintiff independent executor of her will—copy of will filed in Llano County for record April 16, 1895.

7.   The defendants Rufus G. and C. H. Byrn say they each inherited one-sixth of one-ninth of the said Rezin Byrn league and labor of land and say that "the balance of what we gained in the suit against Mrs. Ball we bought from other heirs of said Rezin Byrn."   "I was plaintiff in a certain suit in the District Court of Llano County, Texas, against Sarah C. Ball et al. for the recovery of a portion of the Rezin Byrn league and labor of land in Llano County, Texas, embracing all the land in

said league and labor not sold by said Rezin Byrn in his life time. I have been informed by my attorneys that said suit was tried in December, 1892, and that we gained it."

8. Said original headright certificate has the following endorsements on it, and no other: "For value received I hereby transfer and convey to Martin D. Ramsey, heirs and assigns, forever, all my right, title and interest to one labor of land, being a part of the quantity to which I am entitled by virtue of the within certificate, with full power to locate and perfect title to the same. Columbus, April 24, 1838. Rezin Byrn." "This is to show that I have surveyed for Martin D. Ramsey one labor of land two miles southwest of the town of Columbus, being a part of the land to which Rezin Byrn is entitled by virtue of the certificate and the amount to which said Ramsey by virtue of the above transfer. Columbus, April 24, 1838. Willard Woodhous, deputy surveyor, County of Colorado."

9. Rezin Byrn's father and mother died before he did and he left surviving him no child or descendant of such. He left surviving him nine brothers and sisters or their descendants, as follows:

(First). Wm. B. Byrn, who is now dead, and who left surviving him children (1) Wm. B. Byrn, (2) Rufus G. Byrn, (3) Mary F. Bryn, who married Frease and died leaving only one child, W. H. Frease, (4) Sarah V. Byrn, who married Northcut, (5) C. H. Byrn, (6) Jas. F. Byrn.

(Second) John C. Byrn, who is dead and left surviving him the following: (1) Lizzie R. Byrn, who by marriage became Wilson, (2) F. T. Byrn, who by marriage became Stephens, (3) Jas. P. Byrn, (4) A. B. Byrn, (5) Sallie A. Byrn, who by marriage became Patton, (6) Wm. L. Byrn, (7) M. J. Byrn, who by marriage became McAdoo, (8) Susan S. Byrn, who by marriage became Kennedy, (9) Eliza Byrn, who by marriage became Odom, (10) Lizzie I. Byrn, who by marriage became Hardcastle, (11) Helen Byrn, (12) Monia Byrn.

(Third) M. Lafayette Byrn.

(Fourth) Elizabeth Byrn, who by marriage became Leach, and who left surviving her (1) Rebecca A., who by marriage became Baxter, (2) Nancy B., who by marriage became Knox.

(Fifth) Cynthia Byrn, who by marriage became Wilson, and died leaving the following children: (1) M. J. Wilson, who by marriage became Ridgeway, (2) John Wilson, (3) M. B. Wilson, who by marriage became Keithly, (4) R. F. Wilson, (5) J. B. Wilson, (6) Rebecca E. Wilson, who by marriage became Gray, (7) Lou P. Wilson.

(Sixth) Fannie Byrn, who by marriage became Alsup.

(Seventh) Mary Ann Byrn, who by marriage became Jennings.

(Eighth) Rebecca Byrn, who married L. R. Jennings.

(Ninth) Jas. H. Byrn, who died and left surviving him the following children: (1) Jas. L. Byrn, (2) Mrs. Hattie P. Phelps, (3) Mrs. Miriam M. McNabb.

10. By quit claim deed dated September, 1890, Marcus L. Byrn

conveyed to Jno. C. Oatman all his interest in the land in controversy in this suit.

11. By power of attorney dated April 25, 1891, C. H. Byrn and R. G. Byrn authorized Jno. C. Oatman to take possession of, sue for and recover the possession of the land in controversy in this suit, agreeing for his services to convey to him an undivided fourth interest of such lands as he should so recover.

12. Jno. C. Oatman executed to Ben F. Gooch a trust deed, dated 1892, on his interest in said land, under which trust deed Gooch duly conveyed to S. W. Kendrick all said interest of said Oatman in said land in controversy in this suit.

13. It was admitted and agreed by the plaintiff that the defendants C. H. and R. G. Byrn had purchased eight-ninths and that Jno. C. Oatman had purchased one-ninth of the land in controversy from the heirs of Rezin Byrn, with the exception as to such eight-ninths of the interest claimed by said C. H. Byrn and R. G. Byrn as heirs of Rezin Byrn, taking at the time of such purchase quit-claim deeds therefor. Thereupon one of the counsel for defendants stated that defendants C. H. and R. G. Byrn had only one deed of conveyance from the heirs of Rezin Byrn, and that said deed was not executed nor signed by all the heirs of Rezin Byrn, and did not purport to have been so executed. And thereupon the attorney for plaintiff stated that he had made such admission under a misapprehension of the facts, and by consent of all parties said admission was formally withdrawn, and thereupon the defendants introduced in evidence a quit-claim deed dated November 18, 1890, conveying to the defendants C. H. Byrn and R. G. Byrn all the right, title and interest of the grantors in and "to the land in controversy," executed by J. L. Byrn, W. M. Byrn, J. F. Byrn, Willie H. Frease, Sarah V. Northcut, Cynthia Wilson, L. Wilson, Mrs. L. R. Wilson, G. L. Hardcastle, Jesse Hardcastle, W. L. Byrn, Mrs. M. Sullivan, J. F. Knox, N. B. Knox, R. A. Baxter, W. D. Jennings, M. A. Jennings, Wm. T. Alsup, Fannie Alsup, M. M. Phelps, Hattie P. Phelps, W. L. McNabb, N. B. McNabb and Jesse Sullivan, who executed said deed as grantors.

It is proper to add that the headright certificate to Rezin Byrn, by virtue of which the land was patented, shows on its face that said Byrn, at the time of the issuance of the certificate—January 19, 1838—was a man of family.

*Opinion.*—1. Appellants' assignments of error present but one question of fact for decision, and that is whether or not it is made to appear that Eliza Byrn was the wife of Rezin Byrn in 1838, when he acquired the certificate under which the land was patented. The certificate was for a league and labor of land, and under the law existing at that time Rezin Byrn was not entitled to a certificate for that quantity of land without proving that he was a married man. Republic of Texas v. Skidmore, 2 Texas, 265; Hill v. Moore, 85 Texas, 342. It was shown

that Rezin Byrn and Eliza Byrn were husband and wife, and the testimony of the plaintiff tends to show that, to his personal knowledge, that relation existed as far back as 1838. It was also shown that the marriage relation was dissolved in 1870 by the death of Eliza Byrn.

In Nixon v. Cattle Co., 84 Texas, 411, the court say: "The statute provides, 'that all the effects which the husband and wife may possess at the time the marriage may be dissolved shall be regarded as common effects or gains, unless the contrary be satisfactorily proved. Rev. Stats., art. 2853; Pasch. Dig., art. 4638. The evidence does show that the second wife of Nixon survived him; and therefore if they were lawfully married the presumption is that the right in question belonged to the community estate, and the burden rests upon those who claim the contrary to rebut that presumption by satisfactory evidence that their marriage took place after the services were rendered for which the certificate was granted."

The survey of land of which the land in controversy was a part was on hand at the time the marriage between Rezin Byrn and Eliza Byrn was dissolved by death, and it was not shown that it was acquired prior to the marriage. Therefore, under the case quoted from and the other decisions above referred to, we think it was proper to hold that the land was community property between Rezin and Eliza Byrn.

2. The will of Eliza Byrn devised to appellee "833 acres of land in San Saba County, Texas, to be taken off of the headright league of land granted to Rezin Byrn." Appellants maintain that this devise is void for uncertainty, because the intention was that the devisee should receive a separate and distinct 833 acres, and not an undivided interest in the entire survey, and that the will does not sufficiently identify the particular 833 acres attempted to be devised.

It has been held that when a voluntary deed conveys a certain number of acres without describing the land conveyed, to be taken from a larger tract described, the grantee becomes by his deed a tenant in common, having a fractional interest, represented by a fraction whose denominator is equal to the number of acres in the larger tract described and whose enumerator is equal to the number of acres conveyed. The grantee acquires such fractional interest in every acre of the larger tract. Dohoney v. Womack, 1 Texas Civ. App., 362. See also, Nye v. Moody, 70 Texas, 434; Wofford v. McKinna, 23 Texas, 36; Slack v. Dawes, 3 Texas Civ. App., 520.

We think the same rule that applies to a deed voluntarily executed by the owner should apply when the title is claimed under a will.

3. Appellee alleged in his petition that the 1920 acres of land described in his petition was all that remained after satisfying the community indebtedness of Rezin and Eliza Byrn, and the testimony shows that Rezin Byrn had sold all the balance of the survey except said 1920 acres. Appellee could elect to ratify the action of Rezin Byrn in disposing of the balance of the land and have his interest in the entire survey taken out of the 1920 acres remaining unsold.

4. The plaintiff did not seek a partition of the entire grant. He elected to take the 833 acres to which he was entitled out of the 1920 acres not sold, and therefore it was not necessary that the persons who had purchased the balance of the survey from his cotenant, Rezin Byrn, should be made parties.

5. Appellants addressed a special demurrer to appellee's petition, upon the ground that said petition failed to allege that Eliza Byrn was the wife of Rezin Byrn. Appellants state in their brief that appellee's petition alleged that the certificate by virtue of which the land was patented to Rezin Byrn was issued to him as a man of family during the existence of the marital union of Rezin and Eliza Byrn, and that it became the community property of said Rezin Byrn and Eliza Byrn. We think this was a sufficient averment that Eliza Byrn was at the time the wife of Rezin Byrn. The statement that the certificate was issued during the existence of the marital union of Rezin and Eliza Byrn is equivalent to saying that Rezin and Eliza Byrn were married at that time, and if they were so married then Eliza Byrn was the wife of Rezin Byrn.

6. In the absence of a special exception, we think the plaintiff's petition was sufficient to admit testimony and support a finding that Rezin Byrn had sold all of the headright grant except the 1920 acres.

No reversible error has been pointed out, and the judgment will be affirmed.

*Affirmed.*