Appellant did not testify, and introduced no witnesses.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of the Commission of Appeals has been examined by the judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

GRAVES, Justice.

Appellant in his motion for a rehearing herein lays great stress on the case of Rubio v. State, 121 Tex.Cr.R. 621, 50 S.W.2d 294, which lays down the doctrine that the possession of recently stolen property, in order to have sufficient probative force as corroborating an accomplice, such possession must be exclusive. That this is a sound doctrine we do not question, but in our judgment it is not applicable in this instance. The instrument used in the blotching of the brands on the stolen sheep, if it came in such a category, was found in the barn of appellant, over which barn the accomplice witness exercised no ownership nor control; such being invested in the appellant alone.

We have carefully gone over the record in this case in the light of this motion, and see no reason why our conclusions in the original opinion should be changed.

The motion is overruled.

**LAVACA PETROLEUM CORPORATION et al. v. RUNK.**

No. 3176.

Court of Civil Appeals of Texas. Beaumont.

Dec. 30, 1937.

Rehearing Denied Jan. 12, 1938.

Boyles & Atkinson and M. S. McCorquodale, all of Houston, and John W. Beveridge, of Borger, for appellants.

Fulbright, Crooker & Freeman, of Houston, R. A. Barton, of Port Lavaca, and M. C. Chiles, C. A. Leddy, and Shields & Johnson, all of Houston, for appellee.

O'QUINN, Justice.

Appellee sued the Lavaca Petroleum Corporation and W. A. Williams to recover an interest in certain oil and gas leases held by the Lavaca Petroleum Corporation of which Williams was president. The case was tried to a jury upon special issues, upon their answers to which judgment was entered in favor of appellee against appellants awarding him a 510-acre undivided interest in the named and described leases in controversy. Motion for a new trial was overruled, hence this appeal.

We shall discuss only the questions and matters we deem necessary to a determination of the appeal.

The record reflects that some time about the 1st of April, 1934, appellee Runk lived at Port Lavaca, in Calhoun county, Tex. He had so resided for about 18 years. He was well acquainted with and had the confidence of the persons residing in that vicinity, particularly those in the rural sections. About that time he became acquainted with C. B. Polk and Joe Compton and W. A. Williams. They lived in Houston, Tex. Polk and Compton had gone to Calhoun county for the purpose of obtaining a "block" of oil and gas leases on land near Port Lavaca. They wished to acquire leases on some 5,000 acres. After some efforts with practically no results, they, upon the recommendation of a Mr. Roemer, got in touch with appellee Runk, and enlisted his aid in securing leases on land that they had been unable to lease. According to the testimony of Polk, Compton, and Williams, they had agreed among themselves to originate the enterprise on these terms: Williams was to furnish the money to pay for the leases, and Polk and Compton were to obtain the leases. The leases were to be owned by them in equal portions; that is, one-third each in the block. The agreement Polk and Compton made with Runk was that he was to aid them in securing the leases and he was to have a reasonable acreage per cent. interest in all of the leases. He was not to receive any money pay for his services, but he was to have a reasonable acreage per cent. interest in the leases themselves. Under this agreement Runk actively assisted in securing the leases, which covered 5,100 acres of land consisting of numerous tracts. Williams was to get his money furnished in paying for the leases back by selling a portion of the leases after which the leases belonged to Williams, Polk, and Compton in equal portions or interests. Mr. Tom Taliafierro was the attorney and legal adviser of Williams, Polk, and Compton in organizing the project. He claimed he was to receive as his fee for his services 25 per cent. of the leases; that is, an acreage equal to 25 per cent. of the number of acres leased. A disagreement arose between him and Williams, Polk, and Compton. This was settled by Taliafierro agreeing to relinquish his employment, and to accept a transfer of leases covering 183 acres for the services he had rendered. This was done. The remainder was held in equal interest by Williams, Polk, and Compton. They, Williams, Polk, and Compton, finally concluded that the enterprise should be incorporated; the stock in the corporation to be issued to them in the same proportion as their respective interests in the leases, which composed the entire capital of the corporation. In taking the leases, it being contemplated that the enterprise would be incorporated, at the suggestion of Williams that it would facilitate matters, the leases were taken in the name of Williams, he to hold them for himself, Polk, and Compton, in the common enterprise.

The evidence without dispute shows that Williams, Polk, and Compton were partners in the enterprise. Their agreement that Williams was to furnish the money to pay for the leases, and Polk

and Compton were to do the work in securing the leases, and after Williams had received his money back that he had furnished to pay for the leases by the sale of enough of the leased acreage to find the money, they then to share equally in the result of the undertaking, under all the decisions made the undertaking one of partnership. Thompson v. Schmitt, 115 Tex. 53, 274 S.W. 554; Freeman v. Huttig Sash & Door Co., 105 Tex. 560, 571, 153 S.W. 122, Ann.Cas.1916E, 446; Brinkley v. Harkins, 48 Tex. 225; Smith v. Kendrick, Tex.Civ.App., 55 S.W.2d 598; Cockburn v. Irvin, Tex.Civ.App., 88 S.W.2d 747.

■ The enterprise (partnership) was incorporated as the "Lavaca Petroleum Corporation," and stock issued in accordance with the original understanding and agreement; that is, stock to each in the ratio of his interest in the leases, they constituting the whole of the capital stock. Runk, not having received any interest in the leases, made demand for conveyance to him of his interest, which being refused, he brought this suit to recover same.

We overrule appellants' assignments that the Lavaca Petroleum Corporation, appellant, took the leases free from any asserted parol trust in favor of Runk, because, it is insisted, there was no evidence that any officer or agent of the corporation received or had any notice, while acting as such officer or agent of such corporation, that Runk was asserting an interest in the leases, and therefore the judgment was wrong. There is no force in the contention because the leases were acquired by Williams, Polk, and Compton, under an agreement, carried out, that constituted them partners engaged in a joint venture. Runk was employed by them to assist in procuring the leases on their promise that he should receive for his services a reasonable acreage percentage in the leases. While Williams, in a way, attempted to deny that he was a party to Runk's employment, and had no knowledge of the terms of his employment by Polk and Compton, the record is clear that he was so employed by Polk and Compton, and we think that the record shows admission by Williams that he was fully aware of Runk's employment, and the manner of his compensation, and fully agreed to same. Further, in partnership affairs, knowledge of a fact by one partner is knowledge of same by each partner.

The original plan was that when the leases were secured a corporation would be formed and the leases conveyed to it to constitute the capital stock, and that stock would be issued to each of the partners in proportion to the interest held by him in such partnership. Williams testified: "It was understood that after I got my money back and the leases turned into the corporation, and the stock was to be distributed 10 percent to Mr. Taliafierro, 30 percent to myself, 30 percent to Polk and 30 percent to Compton."

He further testified:

"Q. When these leases were transferred to the corporation they were to take interest, whatever interest they had in the project—A. Yes, sir.

"Q.—in stock in the corporation in the same ratio of their interest? A. Yes, sir."

So, it is absolutely clear that under the agreement the entire capital stock of the corporation was to be issued to those owning an interest in the partnership or joint venture, as a substitute for their interest in the leases.

But it is contended that there were other stockholders than Williams, Polk, and Compton. The record shows this to be true, but it further shows that each of these stockholders paid no money into the corporation for their stock, but received stock for the corresponding interest they held in the partnership assets (the leases) when the charter was received for the corporation. Each of these stockholders had acquired an interest in the partnership from Polk, Compton, or Williams, and received stock in the corporation in exact proportion to the interest they had acquired. This is not questioned.

Williams testified:

"Q. Who were the stockholders (in Lavaca Petroleum Corporation)? A. Myself, Ehlen, Mr. Boyles and Mr. Polk and Mr. Ryan.

"Q. The bringing in of Mr. Ehlen and thoses others, they were men who had purchased some interest from you four parties? A. The others had purchased or received from us." The record is clear that Ryan, Boyles, and Ehlen had, before the enterprise was chartered as a corporation, bought an interest in the leases from the partners, and went along with the original agreement that the enterprise would be chartered, and receive stock in the corporation in proportion to the interest they had in the leases.

Appellants offered the case of Teagarden v. Godley Lumber Co., 105 Tex. 616, 154 S.W. 973, as supporting their contention that when Williams conveyed the leases to Lavaca Petroleum Corporation, it took them free from any parol trust in favor of Runk, because there was no testimony to show that any officer of the corporation, while acting as such, received notice that Runk was asserting an interest in the leases. It is not believed the case supports the contention. There a party conveyed property to an existing corporation, and it was held that the corporation took the property free from liability for any secret equity existing against the property of which it had no notice at the time it acquired the property. This is a well established and sound rule of law, but, as we have said, under the facts, has no application to the instant case. Here the sale of the leases was not to an existing corporation. There was an existing partnership which merely changed its mode of doing business by transferring all of its assets to a corporation formed for that very purpose, and stock in the corporation was issued to the members of the partnership in the proportion to their interest in the partnership property. Further, Williams, a member of the partnership, held title to the leases in his name for this very purpose. He knew all along that Runk was employed by the partnership to assist in securing the leases. He was made the president of the corporation when it was formed. He not only had notice of Runk's claim before the corporation was formed, but actual knowledge of same as president of the corporation at the very moment it was chartered.

■ It is well settled that a partnership cannot avoid its liabilities simply by incorporating and transferring its assets to the corporation formed for that purpose. If such could be done, no one could afford to make contracts with a partnership lest he find his obligation unenforceable because of an overnight transfer of all of its assets to a purposely formed corporation. Cook on Corporations, Vol. 3, § 673, p. 2218; Thompson on Corporations, Vol. 3, p. 272; Id. Vol. 3, § 2352; Morrison v. Sewell, Tex.Civ.App., 4 S.W.2d 1029; Du Vivier & Co. v. Gallice, 2 Cir., 149 F. 118; Stephenson v. Callihan, Tex.Civ.App., 60 S. W.2d 805, writ denied; Texas Loan Agency v. Hunter, 13 Tex.Civ.App. 402, 35 S.W. 399.

In Cook on Corporations, cited supra, it is said: "Where a partnership incorporates a company and transfers to that company all the firm's assets in exchange for stock, the corporation is liable for the debts of the partnership. Such transaction is not a purchase but simply a change in the mode of doing business."

In Thompson on Corporations, cited supra, it is said: "Thus it has been held that a corporation organized by the members of a partnership to which all of the assets of the firm's property were transferred, and all the stock issued to such members and the business continued at the same place is sufficient to render the corporation liable for the partnership's debt though not expressly assumed."

And (Vol. 3, § 2352): "On the same theory a corporation is not a bona fide purchaser of a note transferred to it by a firm which it succeeds."

Again, in same section: "And in another case where a corporation was formed by the members of a partnership and each member transferred all of his interest in the firm's property to the corporation and received therefor an aliquot part of the capital stock and the corporation continued the business of the firm, it was held that the debts of the partnership became the debts of the corporation and it was liable therefor."

In Du Vivier & Co. v. Gallice, cited supra, it is said: "A corporation organized by the members of a partnership, to whom all the stock is issued, to take over all of the property of the partnership, and continue its business at the same place is liable for the debts of the partnership, even though they are not expressly assumed."

In Stephenson v. Callihan, supra, this court, speaking through Chief Justice Walker on similar facts, announced this rule and writ of error was refused by the Supreme Court.

What we have said disposes of appellants' first four assignments.

■ After securing the desired leases, it appeared that one Weichert claimed to have leases covering 2,100 acres of the block leased, and placed his leases on record. Also, it appeared that appellee, Runk, claimed that he was an equal partner with Weichert in the leases claimed by Weichert. When Weichert put of record the leases claimed by him, Runk sued Weichert for judgment for one-half of the leases. This

situation as to the leases held by Williams, Polk, and Compton caused an attempt on their part to clear up these conflicting claims. Williams wanted quitclaim deeds from Compton, Polk, Weichert, and Runk to himself; this to protect the title to grantees of Williams where he had sold portions of the leases, and to the Steen Drilling Company to whom portions of the leases had been conveyed by Williams for drilling purposes on the lands. Arrangement was made with Weichert and he quitclaimed to Williams all interest claimed by him. At the request of Compton and Polk, Runk dismissed his suit against Weichert, and also executed a quitclaim deed to Weichert for all interest he might have in the 2,100 acres of leases, so that Weichert could then quitclaim a whole interest to Williams. Polk and Compton also quitclaimed their interest in the leases to Williams.

It is contended by appellants that as Runk by quitclaim deed conveyed all his interest in 2,100 acres of the leases to Weichert, this conveyance was binding on him as to such interest, and it was error to render judgment in his favor for 510-acre interest in the whole block of leases totaling 5,100 acres. The record shows without dispute that Runk executed a quitclaim deed to Weichert as a part of the means to clear the block of leases of any conflicting claim as to leases on the land covered, and that he, Runk, did not receive any consideration therefor, and with the understanding that such conveyance would not affect his agreed interest for his services which he was to receive in the entire block of leases. In other words, he gave up his interest in another project (with Weichert), in order to successfully consummate the one in which he was employed (by Polk, Compton, and Williams), but in doing so he did not agree to give up any of his agreed interest in the project in which he was then engaged. This fully and clearly appears from the testimony of Compton. He testified:

"After we had gone into the block it developed that R. F. Weichert had leases on approximately 2100 acres in which Runk claimed an interest; when Weichert filed his leases for record, Runk filed suit against him for his interest in the leases. Polk and myself made a trade with Weichert whereby we secured all his leases, then we had Runk dismiss his suit and quitclaim any interest he might have in the leases secured from Weichert. The trade was made with Weichert here in Houston. Williams knew the details of the trade, from Polk, Weichert and myself. Williams wanted quitclaim deeds from Polk, Runk, Weichert and myself in order to clear up any question of interest in leases sold to various companies which he had executed assignments to. The quitclaim deeds were demanded by the companies who had bought these leases, as well as by the Steen Drilling Company. It was our understanding that we were not releasing our interest in the leases, other than that the leases had been sold or transferred to the Steen Drilling Company as the other companies and that the execution of these quitclaim deeds would not affect our interest in the remaining acreage.

"We discussed the settlement we had with Weichert; we knew then that Runk had this suit pending. Before Weichert could pass title to the leases the suit (Runk) had to be disposed of. Williams told us to do the best we could with Runk on it, and clear it up the best way possible. Polk and myself went to Port Lavaca and had him execute the release and the quitclaim deed. The reason for the signing of the quitclaim deeds was for the purpose of clearing up the title to the leases assigned to Williams by Weichert. This was the reason given by Williams."

Runk surrendered (quitclaimed) his interest in the Weichert leases and dismissed his suit against Weichert at the request of Compton and Polk, for the purpose of clearing up the title to the Weichert leases so as to be able to assemble the block of leases desired by Compton, Polk, and Williams. It was a part of the services or acts required of him under his contract. He received absolutely nothing for his interest in the Weichert leases. Williams testified: "Q. What did you pay Mr. Runk for a release to his claim of having one-half interest in that 2000 acres? A. We didn't pay him anything." Runk testified that his executing the quitclaim deed was not to affect the interest he was to receive in the whole block of leases; that Polk and Compton in making this arrangement with Runk was not only agreed to by Williams, but requested by him, is shown by his own testimony.

He testified:

"Q. Getting back, Mr. Williams, you were interested in getting that quitclaim

deed (from Weichert so that you could go forward with your project? A. Yes, sir.

"Q. Mr. Weichert refused to give it unless you had obtained a release or quitclaim or something from Runk—A. Yes, sir.

"Q. —and make a satisfactory disposition with Runk? A. That is correct.

"Q. In your conference with Polk and Compton your directions to them were to get an adjustment with Mr. Runk, was it not? A. It was their business.

"Q. They were then advised by you to make an adjustment with Mr. Runk? A. Yes, sir.

"Q. You just told them to adjust the matter the best way they could? A. Yes, sir."

Runk's every act was in line with his contract to assist in securing and assembling a block of some 5,000-acre leases for Williams, Polk, and Compton. He surrendered at their request his claim to an interest in the Weichert leases and dismissed his suit to enforce that claim, we think it clearly appears, with the understanding and assurance that he would receive his reasonable acreage interest in the whole block of leases. To sustain appellants' contention would be to perpetrate a fraud upon Runk who was doing the very things requested, relying upon their contract and agreement that his rights and interests in the block of leases thus secured would not be affected.

■■ By several assignments appellants assert that as the sales of leases made by Williams to companies to finance development of the block of leases were made with the knowledge and consent of Runk, such sales carried with them any interest Runk had in the leases conveyed, and so it was error to adjudge to Runk 10 per cent. of the entire block of leases; 510 acres out of what remained at the date of the trial. These assignments are overruled. Runk was not a member of the partnership that originally acquired the leases. He was an employee of the partnership, giving his services for an acreage interest in the leases secured. When the block desired was secured, his compensation for his services was then due. No portion of the leases was assigned or tendered to him, although each and all of the partners knew he had not been paid. He was never a partner in the enterprise, nor a stockholder in the corporation that took over the assets and activities of the partnership. He at no time had any voice in the matter. The jury found that 10 per cent. was the reasonable per cent. interest to which he was entitled. There is no complaint against this finding. Williams knew and was a party to the contract to pay Runk for his services in acreage out of the leases. As at his request the leases were taken in his name, he held the amount of acreage to which Runk was entitled. in trust for him, and his, Williams', conveyance of portions of the lease acreage to Humble, Magnolia, Crown, and others to obtain a drilling contract, such conveyances did not affect the agreed amount Runk was to receive under his contract with the partnership, and, there being sufficient acreage remaining (some 1,200 acres) after Williams made these conveyances, Runk was entitled to recover his agreed interest out of such remaining acreage. Beale's Heirs v. Johnson, 45 Tex.Civ.App. 119, 99 S.W. 1045, writ refused; Byrn v. Kleas, 15 Tex.Civ.App. 205, 39 S.W. 980; Heller v. Heller, 114 Tex. 401, 269 S.W. 771. Moreover, when the assembling of the desired block of leases was completed, Runk had fully performed his contracted services to the partnership, his right to a 510-acre undivided interest in the block of leases became fixed and vested at that time, and it was obligatory upon the partnership to set apart to him his said interest; hence the subsequent conveying by Williams of portions of the leases for the purpose of securing development affected only their interest, and did not operate to diminish Runk's earned and vested interest of 510 acres in the remaining leases.

But appellants say that the release or quitclaim deed executed by Runk as to some 2,000 acres of the Weichert leases, which were a part of the 5,100 acres block, divested out of him all rights he had in said Weichert leases, so he was not entitled to recover as to that portion. This contention is not sound. That he received no consideration for this deed was found by the jury and has full support in the record. Furthermore, the jury found that Runk executed the deed with the understanding with Williams, Polk, and Compton, that said deed was for the sole purpose of clearing the title so that the oil companies that had contracted to drill for consideration of certain portions of the leases would proceed to drill, and that Runk's execution of the deed would not affect his agreed interest in the block of leases. This finding is not challenged by appellants as not having suffi-

cient support in the evidence. The jury further found that Runk relied upon these statements, and that but for same he would not have executed the quitclaim deed.

Williams testified:

"Q. Isn't it a fact that Polk and Compton, under your direction, took Mr. Runk's quitclaim, and it was executed with the same understanding and agreement? A. It was under direction of counsel that Mr. Runk's quitclaim deed was executed.

"Q. Your understanding was that it did affect Mr. Runk's interest? A. No, it wouldn't affect it."

So, it is without dispute that Runk, at the request of the partners and for their benefit, executed the quitclaim deed to the interest he was asserting a claim in the Weichert leases, with the clear understanding and agreement that the execution of such deed did not and would not affect the acreage interest he was to receive for his services in assisting in securing and assembling the block of leases.

There are other assignments presented. We have carefully considered all of them. None of them show error. All of them are overruled.

The judgment should be affirmed, and it is so ordered.

Affirmed.